UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. S-1 4:22 CR 254 JAR |
| KEITH EDWARD MATTHEWS, | ) ) ) |
| Defendant. | ) ) |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

**1.  PARTIES:**

The parties are the defendant Keith Edward Matthews, represented by defense counsel Brocca Morrison, and the United States of America (hereinafter "government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2.  GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Conspiracy to Distribute a Controlled Substance, a lesser offense necessarily included in Count I of the Superseding Indictment, and Distribution of a Controlled Substance in Counts II, III, and IV, the Government agrees that no further federal prosecution will be brought in this District relative to Defendant's distribution of controlled

1

substances as charged in the Superseding Indictment, of which the Government is aware at this time.

Defendant acknowledges that this disposition confers upon him the benefit of eliminating the 20-year mandatory minimum sentence that would be required if he were to be convicted of Count I of the Superseding Indictment as currently charged. In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a).

The parties understand that the Court is neither a party to nor bound by this agreed sentencing range or the Guidelines recommendations agreed to in this document. The parties further understand Government will be seeking an upward variance and/or departure from the guideline imprisonment range, based upon the death of J.G. from fentanyl intoxication on or about February 3, 2021, which the Government intends to prove at the time of the sentencing hearing by a preponderance of the evidence would not have occurred "but for" Defendant's distribution of fentanyl. Defendant will contest this at sentencing and oppose any upward variance and/or departure on this basis.

The Defendant also agrees, pursuant to the guilty plea to the lesser included offense in Count I, and Counts II, III, and IV, to forfeit to the United States all property subject to forfeiture under the applicable statute(s).

**3.  ELEMENTS:**

**COUNT ONE:** As to Count One, the Defendant admits to knowingly violating Title 21, United States Code, Sections 846 and 841, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

> **(i)** Beginning at an unknown time, but including February 3, 2021, and continuing through April 20, 2022, within the Eastern District of Missouri and elsewhere, the Defendant and his co-defendants and/or other persons known and unknown to the government, reached an agreement or came to an understanding to distribute and possess with the intent to distribute a mixture or substance containing a detectable amount of fentanyl; and
>
> **(ii)** That the Defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some time will it was still in effect; and
>
> **(iii)** That at the time the Defendant joined in the agreement or understanding, he knew the purpose of the agreement.

**COUNT TWO:** As to Count Two, the Defendant admits to knowingly violating Title 21, United States Code, Section 841(a), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are as follows:

> **(i)** That on or about March 31, 2022, within the Eastern District of Missouri, the Defendant distributed fentanyl, a Schedule II controlled substance drug; and
>
> **(ii)** The Defendant did so knowingly and intentionally.

**COUNT THREE:** As to Count Three, the Defendant admits to knowingly violating Title 21, United States Code, Section 841(a), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are as follows:

> **(i)** That on or about April 5, 2022, within the Eastern District of Missouri, the Defendant distributed fentanyl, a Schedule II controlled substance drug; and

      **(ii)**      The Defendant did so knowingly and intentionally.

**COUNT FOUR:** As to Count Four, the Defendant admits to knowingly violating Title 21, United States Code, Section 841(a), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are as follows:

      **(i)**      That on or about April 12, 2022, within the Eastern District of Missouri, the Defendant distributed fentanyl; and

      **(ii)**      The Defendant did so knowingly and intentionally.

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

In 2021 and continuing into 2022, investigators with the Drug Enforcement Administration (DEA), St. Louis Division, investigated the distribution of fentanyl in the St. Louis Metropolitan area by Defendant, Keith Matthews, also known as "Kesso," and his co-defendants, Kaitlin Brewer and Cameron Houston. The investigation also encompassed the death of victim J.G. on or about February 3, 2021, from fentanyl intoxication.

During the investigation into the death of J.G., investigators learned that on February 3, 2021, J.G. contacted Houston to obtain narcotics, specifically pressed "M-30" pills that contained fentanyl, and Houston arranged for Brewer to deliver the fentanyl to J.G. Brewer ultimately admitted to investigators that she obtained the fentanyl from Defendant that morning and then supplied the fentanyl to J.G, which later caused his death from fentanyl overdose.

4

Specifically, on the morning of February 4, 2021, J.G. was discovered deceased in his bedroom at his residence in Ballwin, Missouri, located within the Eastern District of Missouri. During the investigation, investigators discovered that J.G. and his girlfriend had been purchasing and ingesting pressed pills that resembled "M-30" Percocet pills, but in actuality contained fentanyl, from Brewer and Houston. On February 3, 2021, J.G. was attending an outpatient treatment facility in Chesterfield, Missouri, when he contacted Houston and Brewer using the Snapchat application requesting to purchase "Percocet pills." Houston, however, was not in the Chesterfield area and contacted Brewer to deliver the narcotics to J.G. The Government intends to prove at sentencing that that Brewer had obtained narcotics that morning from her source of supply, Defendant. Defendant disputes that he sold the fentanyl to Brewer that ultimately caused J.G.'s death and that J.G.'s death was caused by the conspiracy to which Defendant is pleading guilty. Defendant admits, however, that he sold pressed "M-30" or "Percocet" pills containing fentanyl to both Brewer and Houston on other occasions.

At times during the conspiracy, Brewer and/or Houston, would meet with Defendant 2 to 3 times a week to purchase 20 to 40 pills at $10 to $20 per pill. Conversations via text message between Brewer and Houston confirm Defendant was their source of supply, and Defendant later admitted in a recorded, post-*Miranda* interview to DEA investigators that he had previously sold "percs," or imitation Percocet pills, to Brewer and Houston. As described below, Defendant was ultimately arrested after selling these pills, which laboratory analysis confirmed contained fentanyl, in multiple controlled buys orchestrated by investigators.

On February 3, 2021, Brewer ultimately delivered fentanyl to J.G. at the outpatient treatment facility. J.G.'s text messages revealed he snorted half of a pill in the bathroom at the

5

facility. Later that night, J.G. snorted the remainder of the narcotics delivered by Brewer. J.G. was discovered in the morning deceased, by his mother. A subsequent post-mortem examination and forensic toxicology analysis revealed the cause of J.G.'s death was fentanyl intoxication. The parties agree that J.G.'s death was directly attributable to the ingestion of fentanyl and that J.G. would not have died but for his ingestion of fentanyl. Expert testimony in the event of trial would establish the same.

In a post-*Miranda* interview with investigators, Houston admitted to communicating with J.G. on February 3, 2021, regarding selling J.G. the "Percocet pills," which Houston knew to contain fentanyl. Houston also admitted he contacted Brewer to deliver the narcotics to J.G. Brewer also later acknowledged to investigators in a post-*Miranda* interview that she conducted the deal between Houston and J.G. by delivering the narcotics, and Brewer stated that Defendant was Brewer's source of supply for the fentanyl that was supplied to J.G. Defendant disputes that he supplied the fentanyl to Brewer that was supplied to J.G. and caused his death.

Following J.G.'s death, Defendant continued to sell fentanyl, and during the ensuing investigation, investigators conducted three controlled buys from Defendant utilizing a confidential informant. The first purchase was made on March 31, 2022, when a confidential informant purchased 197 tablets directly from Defendant in exchange for $2,000 in United States Currency. The second purchase was made on April 5, 2022, when a confidential informant met with Defendant and again purchased 197 tablets for $2,000 in United States Currency. The third purchase was made from Defendant on April 12, 2022, when a confidential informant purchased 198 tablets from Defendant for $2,000 in United States Currency. The pills were later tested by

6

an expert chemist and were confirmed to contain fentanyl. The total weight for the fentanyl pills purchased from Defendant was 59.3 grams.

Defendant admits he possessed with the intent to distribute, and did in fact distribute, fentanyl to others during the conspiracy and in furtherance of the conspiracy. Although the amount of fentanyl attributable to Defendant is difficult to calculate with precision, the parties are in agreement that, based upon the known evidence, including, but not limited to, the amount of fentanyl Defendant sold to Brewer and Houston; that Brewer, Houston, and the confidential informant or informants used by the government were not Defendant's only customers, and that Defendant's sales spanned at least over one year; and including relevant conduct, Defendant is accountable for an aggregate amount of fentanyl of at least 400 grams but less than 1.3 kilograms. Expert testimony in the event of trial would establish that this amount of fentanyl is an amount that is inconsistent with an amount possessed purely for personal use and is consistent with an amount possessed for distribution.

**5.  STATUTORY PENALTIES:**

The defendant fully understands that the maximum possible penalty provided by law for each of the lesser included offense in Counts I, and Counts II, III, and IV, the crimes to which the defendant is pleading guilty, is imprisonment of not more than 20 years, a fine of not more than $1,000,000.00, or both such imprisonment and fine. The Court shall also impose a period of supervised release of not less than 3 years nor more than life.

**6.  U.S. SENTENCING GUIDELINES 2021 MANUAL:**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal

History Category.  The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

    **a.  Chapter 2 Offense Conduct:**

        **(1)  Base Offense Level:**  The parties agree the Base Offense Level is 30, pursuant to Sections 2D1.1(a)(4).

        **(2)   Specific Offense Characteristics:**  The parties agree that the following Specific Offense Characteristics apply: none known at this time.

    **b.  Chapter 3 Adjustments:**

        **(1)  Acceptance of Responsibility:** The parties agree that three levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty.  The parties agree that the defendant's eligibility for this deduction is based upon information presently known.  If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

        **(2)   Other Adjustments:**  The parties agree that the following additional adjustments apply:  None.

    **c.  Other Adjustment(s)/Disputed Adjustments:**  None.

    **d.  Estimated Total Offense Level:**  The parties estimate the Total Offense Level is 27. Depending on the underlying offense and Defendant's criminal history, Defendant could be a

Career Offender pursuant to Section 4B1.1. If the Court finds Defendant is a Career Offender, the Total Offense Level may be higher and the Criminal History Category maybe as high as a Category VI.  Additionally, the parties understand that the Government will be seeking an upward variance and/or departure from the guideline imprisonment range, based upon the death of J.G. from fentanyl intoxication on or about February 3, 2021, which the Government intends to prove at the time of the sentencing hearing by a preponderance of the evidence would not have occurred "but for" Defendant's distribution of fentanyl.

**e.  Criminal History:**  The determination of the defendant's Criminal History Category shall be left to the Court.  Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category.  The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**f.  Effect of Parties' U.S. Sentencing Guidelines Analysis:**  The parties agree that the Court is not bound by the Guidelines analysis agreed to herein.  The parties may not have foreseen all applicable Guidelines.  The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.  The Government recognizes it is bound by the specific agreements made herein but reserves the right to answer any questions the U.S. Probation Office or the Court might have related to sentencing or present evidence at the Court's request.

**7.  WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

**a.  Appeal:**  The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1)  Non-Sentencing Issues:**  The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, including specifically motions to suppress evidence, discovery and the guilty plea.

**(2) Sentencing Issues:**  The parties agree to waive the right to appeal all sentencing issues except those related to: (1) application of Sentencing Guideline offense-level adjustments (including those based on criminal history) not specifically set forth in the plea agreement or non-application of adjustments specifically set forth in the agreement; (2) calculation of the defendant's criminal history category; or (3) substantive reasonableness of the sentence—above the Guideline range ultimately determined by the Court for appeals taken by the defendant, or below that range for appeals taken by the Government.

**b.  Habeas Corpus:**  The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c.  Right to Records:**  The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought

10

under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8.  OTHER:**

    **a.  Disclosures Required by the United States Probation Office:**  The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

    **b.   Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:**   Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

    **c.  Supervised Release:**  Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed.   These conditions will be restrictions on the defendant to which the defendant will be required to adhere.  Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release.  The defendant understands that parole has been abolished.

    **d.  Mandatory Special Assessment:**  Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $400, which the defendant agrees to pay at the time of sentencing.  Money paid by the defendant

toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines, Restitution, and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The Defendant agrees that any fine imposed by the Court will be due and payable immediately. Pursuant to Title 18, Section 3663(a)(1)(A), the Court may order in addition to any other penalty authorized by law, that the defendant make restitution to the victim's estate, in the event that Court finds by a preponderance of the evidence that J.G.'s death would not have occurred "but for" fentanyl distributed by defendant. The parties agree that in that event, pursuant to Section 3663(b)(3), the defendant shall pay in restitution to the victim's estate an amount equal to the cost of necessary funeral and related services and that the defendant shall be joint and severally liable with his co-defendants for this amount.

**g. Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon his interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim

to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

**9.  ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses.  The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding.  The defendant's counsel has explained these rights and the consequences of the waiver of these rights.  The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel during every phase of the case, including the pre-trial motions stage.  The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and

defense witnesses with defense counsel. The defendant was fully advised of his right to file pre-trial motions and agreed and concurred in the decision not to raise any issues by way of pretrial motions. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

**10.  VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

**11.  CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the government, at its option, may be released from its obligations under this agreement. The government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported

by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement related to sentencing as set forth in paragraph 2 above and/or those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

8/30/2023
Date

LISA M. YEMM, #64601MO
Assistant United States Attorney

8/29/2023
Date

KEITH EDWARD MATTHEWS
Defendant

8/30/2023
Date

BROCCA MORRISON
Attorney for Defendant

15